In the Matter of Louis Dorfman, an Attorney, Respondent.

First Department, May 1, 1936.

*Newman Levy*, of counsel [*Jerome Handler* with him on the brief; *Einar Chrystie*, attorney], for the petitioner.

*Solomon Badesch*, for the respondent.

Martin, P. J. The respondent was charged with professional misconduct in three specifications. The matter was referred to an official referee for hearing. He has found the respondent guilty of two of the charges. The record sustains his findings.

The first charge is based on the following facts: On October 28, 1932, A. H. Grebe & Co., Inc., filed with the clerk of Queens county an assignment for the benefit of creditors to Harold E. Foote. The respondent was attorney for the assignee. The assets of the assignor were offered for public sale on November 21, 1932. The Park Radio Service, Inc., intending to make a bid for the assets, on November 1, 1932, forwarded to the respondent its certified check to his order for $2,500, upon condition that if its bid were not accepted the check should be returned. The respondent, in violation of the condition, deposited the check to the credit of his account.

The Park Radio Service, Inc., did not make a purchase on November 21, 1932. Another sale of the assets of the assignor took place on November 29, 1932, at which time the Park Radio Service, Inc., bid in certain of the assets for $5,800. A controversy thereafter arose between Mr. Bachner, an attorney for the Park Radio Service, Inc., and the respondent, as to whether or not the sale included the patent rights of the assignor. Mr. Bachner stated he would apply to the court to have the patent rights included or to secure a proportionate reduction of the purchase price. Upon the suggestion of the respondent that the balance of the purchase price be paid, Mr. Bachner said he had no objection provided the moneys be held in escrow pending the determination of the court as to the terms of sale. The respondent said he would hold the bill of sale and the money in escrow pending such determination. Accordingly on December 9, 1932, the Park Radio Service, Inc., drew its check for $3,300 to the order of Harry E. Foote, assignee, or Louis Dorfman, attorney, which together with the aforesaid check of $2,500, made up the purchase price of $5,800. The respondent forthwith deposited the check in his account.

Pending a motion for an additional conveyance of the patent rights to the Park Radio Service, Inc., an involuntary petition in bankruptcy was filed against the Grebe Co. Thereupon the attorneys for the Park Radio Service, Inc., withdrew the motion and by letter of April 15, 1933, stated that " the assignee may, therefore, deposit without any restrictions the $5,800 heretofore paid by us." The bill of sale of the assignee was delivered to the Park Radio Service, Inc., in April, 1933. The trustee in bankruptcy questioned the legality of the sale of the bankrupt's assets to the Park Radio Service, Inc.

The respondent when examined before the referee in bankruptcy was questioned with respect to the $5,800 which had not been paid by the Park Radio Service, Inc., and stated that he was holding that amount in escrow. The assignee, in compliance with an order in the bankruptcy proceeding, turned over all the property of the assigned estate to the trustee in bankruptcy with the exception of the $5,800 which the respondent claimed he was holding in escrow. Proceedings were thereupon commenced to compel the respondent to turn over the $5,800 to the trustee in bankruptcy. At the hearing, at which the respondent did not appear, the Park Radio Service, Inc., consented that the moneys be turned over. An order was made by the referee in bankruptcy on June 2, 1933, directing the respondent to turn over to the trustee the sum of $5,800. The respondent disregarded the order. The trustee thereupon moved that he be punished for contempt. The motion was denied, without

prejudice to a renewal on proper papers, apparently because jurisdiction of the respondent had not been obtained. Numerous efforts were subsequently made to serve the respondent with motion papers, but the respondent could not be located. Subsequently, after the matter had been brought to the attention of the Bar Association, a brother of the respondent inquired of the attorney for the Park Radio Service, Inc., whether an adjustment could not be had. A compromise was agreed upon and approved by the trustee in bankruptcy, whereby the respondent's brother agreed to pay $3,000 in cash and the balance of $2,800 in four promissory notes to be secured by the pledge of the Park Radio Service, Inc., of its interest in the name, good will and trade-marks of A. H. Grebe & Co., Inc. The notes were not paid, whereupon the Park Radio Service, Inc., was called upon to make good. The trustee finally received the full amount.

It thus appears that the respondent immediately deposited the initial check for $2,500, in violation of his agreement that it should be returned if there was no sale. He violated the escrow agreement that he should hold intact the sum of $5,800 pending adjustment of the controversy as to the terms of sale. Respondent contends that as to the $2,500 first received, this was turned over to the assignee before the bankruptcy proceeding. As to the $3,000, he claims he had a right to retain this against his fees for services rendered the assignee. The latter contention is absurd upon its face. His fees were the subject of judicial allowance, for which no application had been made. He also ignores completely the special agreement under which the moneys were received and held. Not only does the respondent evince a complete disregard for the obligations of his trust, but he has attempted to conceal the truth. He did not turn over to the assignee the $2,500 originally received. This amount he applied to his own use. The payment of $2,500 to the assignee was made in large part out of the $3,000 subsequently received by the respondent, and in violation of his agreement to hold, and his acknowledgment that he held $5,800 in escrow. The assignee was not in possession of the $2,500 at the time of the bankruptcy proceedings and the respondent then conceded that he held the sum of $5,800 in escrow.

The evidence submitted in support of the second charge disclosed that in October, 1932, the respondent sold to one Morris A. Steinberg a collateral note for $2,000 of the Wetone Realty Corporation in the sum of $2,500, to the order of Clifton Hotel Corporation, due May 1, 1933. In April, 1933, Mr. Steinberg reminded the respondent that the note would become due on May first, whereupon he replied, " Let me have it and I will attend to it for you." Mr.

Steinberg gave him the note, receiving from the respondent a receipt reading as follows:

" Received from M. A. Steinberg note for $2,500 of Wetone Realty Corp. for collection, said note due May 1, 1933.

" LOUIS DORFMAN."

Subsequent to May 1, 1933, Mr. Steinberg inquired of the respondent respecting the note, and was advised that it had not been paid, that there were some things to be adjusted. He was thereafter given similar excuses, until some time in June he called at the office of the Wetone Realty Corporation, when he was informed that the corporation had anticipated payment of the note by the payment to the respondent of $2,350 on April 1, 1933. Mr. Steinberg informed the respondent of what he had learned and stated that if he did not pay at once he would take the matter up with the Bar Association. The respondent replied he did not have the money then. Mr. Steinberg said he must have it by June fifteenth. The respondent gave him an undated check for $2,500, in which he inserted the date June 15, 1933, and on that date presented it for certification. Payment was refused because of insufficient funds. On returning home Mr. Steinberg found in his letterbox a note by the respondent reading as follows:

" DEAR STEINBERG: Don't use today not ready. Will call you soon. Thanks. L. D.
" June 15, 1933."

On June sixteenth Mr. Steinberg complained to the grievance committee of the Bar Association. Thereafter a brother of the respondent agreed to pay Mr. Steinberg $2,500 in installments. He has received in all $1,000.

The respondent testified at the hearings and urges here that having applied to Mr. Steinberg for a personal loan, the latter stated the Wetone transaction was outstanding and worried him because the usury feature had not been concealed, and suggesting that if he could get a check for $2,500 from the respondent, whereby he would have the worry of collection removed from his shoulders, he would let the respondent have the note and mortgage securing the same, to use the proceeds thereof as a loan for ninety days. He claimed further that the note and mortgage were accordingly exchanged for his undated check, which was undated because he did not then know whether the note would be discounted or anticipated and his ninety days' loan was to commence from the date he received settlement from the Wetone Realty Corporation. All the attendant facts and circumstances contradict this version of the transaction.

The evidence submitted demonstrates the unfitness of the respondent to remain a member of the bar, and his utter lack of appreciation of the obligations of his profession.

The respondent should be disbarred.

McAvoy, O'Malley, Townley and Glennon, JJ., concur.

Respondent disbarred.